IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **CAPE HORN TEQUILA LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action File No.: 1:26-cv-00027-ADA |
| | § | |
| v. | § | |
| | § | |
| | § | JURY TRIAL DEMANDED |
| **AIKO IMPORTERS, INC.** | § | |
| **IRINA KOGAN & FELIKS SHEKHTMAN** | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW, Plaintiff, Cape Horn Tequila LLC ("CHT"), by and through its attorneys, Eureka Intellectual Property Law, PLLC and Nichamoff Law, P.C., files this Complaint complaining of Defendants, Aiko Importers, Inc. ("Aiko"), Irina Kogan, and Feliks Shekhtman, and alleges as follows:

## I. JURISDICTION

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the suit is between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. This action includes a claim of unfair competition coupled with a substantial and related claim under trademark laws, 15 U.S.C. §§ 1051 *et seq*. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1338(a) and (b).

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because all or a substantial part of the events or omissions giving rise to the claim occurred in this District.

## II. PARTIES

4. Plaintiff is a domestic limited liability company with its address at 3602 19th Street North, Texas City, Texas 77590.

5. Defendant Aiko Importers, Inc. is a corporation organized under the laws of South Carolina registered to transact business within the State of Texas with its principal place of business located at 225 Henry D. Robinson Blvd, Pendergrass, GA 30567-4653. Upon information and belief, Aiko Importers, Inc. may be served this Complaint by service upon its registered agent Registered Agents Inc. at 6650 Rivers Ave., Suite 100, Charleston, SC, 29406.

6. Defendant Irina Kogan, an individual and a citizen of the State of Georgia, may be served with process at 2580 Trailing Ivy Way, Buford, Georgia, 30519.

7. Defendant Feliks Shekhtman, an individual and a citizen of the State of Georgia, may be served with process at 2580 Trailing Ivy Way, Buford, Georgia, 30519.

## III. INTRODUCTION

8. This case concerns a joint venture between Plaintiff, Cape Horn Tequila LLC, who manufactures tequila for import and sale in the United States according to its proprietary formula, and Aiko Importers, Inc., along with its Chief Executive Officer, Irina Kogan, personally, and her husband, the Managing Partner of Aiko, Feliks Shekhtman, personally, who import alcoholic beverages into the United States. The purpose of the joint venture was to grow sales of Cape Horn Tequila, thereby profiting both CHT and Aiko.

9. In a typical tequila manufacturer/importer arrangement, the manufacturer pays for all production costs up front, including glass bottles, corks, materials, juice, distillation, bottling, and freight. The importer receives finished product into their bonded

warehouse, handles federal import compliance, and sells to distributors. Prior to entering into a relationship with Defendants, CHT carried out both the manufacturer and importer roles directly, manufacturing the tequila, importing it into the United States under its own import permit, and selling to distributors.

10. In contrast, under the joint venture arrangement, Aiko was responsible for payment of production costs, including glass bottles, materials, bottling, distillery invoices, and freight. The proprietary formulation and brand remained with CHT. Finished product was shipped to Aiko's warehouse, and Aiko sold and continues to sell to distributors. The parties verbally agreed to a sales price for the tequila that allowed Aiko to recoup its upfront costs for production and overhead, leaving a reasonable net profit. The parties verbally agreed that this net profit would be split 50/50 between Aiko and CHT.

11. The essential terms of the joint venture were reduced to writing in email correspondence, but no formal joint venture agreement was ever executed by the parties, notwithstanding Plaintiff's repeated attempts to do so.

12. The relationship between the parties began to sour in April of 2025 due to: (1) disagreements in social media posts and marketing, particularly Irina Kogan's insistence that Plaintiff post stories that exaggerate Aiko's support of the veteran community on social media and both Plaintiff's website and the website of an unaffiliated charity organization, Skeleton Crew Adventures; (2) Defendants shirking their obligation to formalize the joint venture relationship in writing; (3) Defendants' failure to provide accounting of sales of Cape Horn Tequila and Plaintiff's share of the proceeds; and (4) Plaintiff's discovery that Aiko Importers, Inc., without Plaintiff's authorization,

fraudulently applied for trademark registrations for the mark CAPE HORN listing Aiko, and not CHT, as the trademark owner.

13. After the relationship between the parties became embittered, Defendants engaged in a course of conduct to frustrate and sabotage Plaintiff's business interests, including tortious interference with prospective relations and unfair competition by way of denigration of the CAPE HORN brand, selling the tequila at greatly reduced prices, thereby diminishing end users' perceptions of the quality of the product (and concomitantly reducing the share of profits owed to Plaintiff).

## IV. FACTS

14. In 2016, Taylor Grieger founded Skeleton Crew Adventures, a 501(c)(3) non-profit organization with the mission to help veterans struggling with post-traumatic stress disorder. Taylor Grieger presently sits on the Board of Directors of Skeleton Crew Adventures. Aside from Grieger's involvement and the fact that a portion of profits from the sales of Cape Horn Tequila are donated to Skeleton Crew Adventures, there is no relationship between CHT and Skeleton Crew Adventures.

15. Taylor Grieger, a principal of CHT, applied for a federal trademark registration, Application No. 88/373802, on April 5, 2019 for the mark CAPE HORN for distilled blue agave liquor.

16. A Co-Responsibility contract was executed on April 5, 2019 between distillery Destiladora del Valle de Tequila, S.A. de C.V. and Taylor Grieger, whereby Grieger acts as a distributor for tequila produced by the distillery.

17. Cape Horn Tequila LLC was formed on May 3, 2019.

18. On May 21, 2019, the Instituto Mexicano de la Propiedad Industrial ("IMPI") granted Taylor Allen Grieger the exclusive right to distribute tequila under the mark CAPE HORN.

19. On August 22, 2019, an Opposition Proceeding, Opposition No. 91250378, was filed in the United States Patent and Trademark Office against Application No. 88/373802 by Viña San Pedro S.A., opposing the registration of the mark CAPE HORN on the basis that their registered mark, CABO DE HORNOS, used in conjunction with Chilean wines, is a literal translation of Cape Horn and would result in consumer confusion as to the source of goods. A Notice of Default was entered on October 11, 2019, and the Opposition was sustained on November 23, 2019.

20. On September 13, 2019, the Consejo Regulador del Tequila, A.C. (Tequila Regulatory Council) reviewed and approved for export Plaintiff's tequila bottle labels bearing Plaintiff's trademark CAPE HORN.



21. Taylor Allen Grieger applied for another federal trademark registration, Application No. 88/753896, on January 10, 2020 for the mark CAPE HORN VETERAN MADE SAILOR APPROVED for distilled blue agave liquor. Again, on August 22, 2019, an Opposition Proceeding, Opposition No. 91265983, was filed in the United States Patent and Trademark Office against Application No. 88/753896 by Viña San Pedro S.A., opposing the registration of the mark on the basis that their registered mark, CABO DE HORNOS, used in conjunction with Chilean wines, is a literal translation of Cape Horn and would result in consumer confusion as to the source of goods. The application was withdrawn and the Opposition was sustained on November 17, 2020. An oral agreement was reached between Grieger and Viña San Pedro S.A., which provided that Viña San Pedro would not take action against Plaintiff's use of the CAPE HORN mark in commerce in the United States, provided there be no attempt to register the trademark.

22. In May or June of 2020, Grieger was introduced by Ken Echols, a Houston-based spirits sales representative, to a buyer employed by Goody Goody Liquor. After tasting Cape Horn Tequila, Goody Goody agreed to purchase Cape Horn Tequila and place it in all Goody Goody stores throughout Texas. The buyer suggested that Plaintiff may need help scaling production to meet the expected demand, and he introduced Grieger to Feliks Shekhtman in a telephone call.

23. In correspondence from Shekhtman to Grieger dated January 13, 2021, Shekhtman outlined terms for a proposed joint venture between Aiko and CHT—profits split 50/50 between Aiko and CHT, and Aiko covers the costs of bottle label registrations, financing production, and distribution expenses.

24. On March 2-3, 2021, Grieger and Michael Lonsinger of CHT flew to Atlanta, Georgia to meet Shekhtman and the Aiko team. During that meeting, Shekhtman proposed the following structure for a joint venture: Aiko would front all production and logistics costs and would handle warehousing in Georgia and distribution, and Aiko and CHT would evenly split profits on all sales. No formal written agreement was executed by the parties.

25. After the March 2020 meeting between the parties, Plaintiff did not receive any meaningful follow-up communication from Aiko for nearly two years. Because nothing appeared to be moving forward with the joint venture with Aiko, Plaintiff continued its operations as in the past—purchasing glass from Spain, buying corks and boxes, purchasing juice from Casa Maestri, bottling, and shipping finished product to Plaintiff's Houston warehouse.

26. Between February 22, 2023 and July 10, 2024, Plaintiff regularly and continuously sold Cape Horn Tequila throughout the State of Texas via Republic National Distributing Company LLC. The tequila was distilled accordingly to Plaintiff's proprietary formula and bottled under its CAPE HORN mark, under the Co-Responsibility contract with distillery Destiladora del Valle de Tequila, S.A. de C.V.

27. On or about December 22, 2022, Shekhtman reached out to Grieger regarding moving forward with the proposed joint venture. This was the first substantial contact from him since the Atlanta meeting in March 2020, aside from a few sporadic texts or calls over the years that never resulted in progress or firm commitments. Shekhtman indicated that Aiko had already begun procuring glass for Cape Horn Tequila, unbeknownst to Plaintiff. During a telephone call, marketing, pricing and logistics were

discussed. Shekhtman was to have a contract drafted to memorialize the terms of the agreement. There was no discussion about joint ownership of the CAPE HORN brand or trademark registrations. Defendants failed to produced a written draft contract as promised.

28. On February 23, 2023, Plaintiff again flew to Atlanta to meet with Defendants. Marketing, pricing and logistics were discussed. Again, there was no discussion regarding brand ownership. An oral contract was formed having the previously proposed terms, sealed by a handshake.

29. On March 24, 2023, Plaintiff prepared and provided a draft contract to formalize the relationship between CHT and Aiko and requested inputs and feedback. Shekhtman believed the draft agreement did not properly reflect the relationship between the parties. But, rather than providing revision, Shekhtman became irate and threatened to end the business relationship between the parties.

30. In May of 2023, the Director of Markets at Total Wines reached out to Plaintiff, expressing interest in placing Cape Horn Tequila in all Texas Total Wine stores.

31. In January of 2024, CHT pressed Aiko to move forward with producing a written joint venture agreement, but Aiko prevaricated with weak excuses to escape its commitment to enter into a written agreement.

32. Despite still no written contract, on March 19, 2024, Plaintiff executed a Letter of Appointment at Aiko's request designating Aiko Importers, Inc. as exclusive agent to register and sell/distribute to wholesalers in the United States Plaintiff's brand of Cape Horn Tequila. The Letter of Appointment was revocable at any time.

33. Unbeknownst to Plaintiff at the time, Defendant Aiko applied for a federal trademark registration, Application No. 98/491905, on April 9, 2024 for the mark CAPE HORN TEQUILA for distilled blue agave liquor. The application was abandoned on November 13, 2024. The application avers that Aiko Importers, Inc. is the owner of the trademark.

34. Also unbeknownst to Plaintiff at the time, Defendant Aiko applied for a federal trademark registration, Application No. 98/584475, on June 4, 2024 for the mark CAPE HORN for distilled agave liquor and distilled blue agave liquor. The application avers that Aiko Importers, Inc. is the owner of the trademark. The application is presently subject to an opposition proceeding, Opposition No. 91295273, filed by Viña San Pedro Tarapaca S.A., which remains pending.

35. On September 17, 2025, Plaintiff formally terminated its business relationship with Defendants and requested from Aiko a final accounting and reconciliation of sales activities to date and assignment of pending trademark Application No. 98/584475 to Plaintiff. Defendants refused.

36. Plaintiff had previously purchased bottles for Cape Horn Tequila from Rockwood and Hines Glass Group Ltd. On September 23, 2025, in response to Plaintiff's inquiry for an upcoming tequila bottle order, Plaintiff was informed by Henri Berthe, Chief Executive Officer of Rockwood and Hines Glass Group, that Feliks Shekhtman telephoned him and pressured him not to conduct business with Plaintiff, claiming that CAPE HORN was Aiko's brand. Hines Glass Group capitulated under Shekhtman's pressure and terminated their business relationship with Plaintiff.

37. On October 7, 2025, Plaintiff contracted with Worldwide Libations LLC to be its importer.

38. On November 21, 2025, David Duhamel, Vice President of Ruby Wines New Hampshire, Inc. informed Plaintiff that Aiko was unloading Cape Horn Tequila at a 27% discount, essentially recovering only Aiko's upfront costs.

39. On December 17, 2025, Shekhtman emailed Dan Lasner, President of Worldwide Libations LLC, claiming that Aiko owns the trademark CAPE HORN by way of Aiko's pending trademark application, and that Aiko will object to other importers attempting to sell Cape Horn Tequila.

40. For calendar years 2024 and 2025, Plaintiff produced, with Aiko fronting the costs of production, 4468 cases of tequila, split among Blanco, Reposado and Anejo varieties, with a distribution sales price of $742,250. This quantity was shipped to Aiko's warehouse and sold/offered for sale to various distributors. Defendants have not provided a full accounting or complete distribution of profits to date, but, based on the distillery invoices and estimated prices for bottles (glass, cork, printing and shipping), the approximate upfront production costs paid by Aiko for the 4468 cases is $200,000. On information and belief, Aiko presently holds approximately between 1100 and 1300 cases of unsold Cape Horn Tequila in their inventory.

41. At least as of February 23, 2026, Defendants began marketing, offering to sell and selling CAPE HORN branded whiskey. Defendants' website falsely claims:

> Every bottle sold directly supports Skeleton Crew, a non-profit sailing foundation dedicated to providing outdoor adventure therapy expeditions for veterans and first responders living with PTSD. Through sailing, teamwork, and time on the open water, Skeleton Crew helps participants reconnect, heal, and regain confidence beyond the horizon.

## V. BREACH OF CONTRACT

42. Plaintiff repeats, realleges, and incorporates by reference, each and every allegation and averment in the foregoing paragraphs with the same force and effect as if the same were more fully set forth at length herein.

43. On or about February 23, 2023, Plaintiff and Defendants entered into an oral contract forming a joint enterprise. The contract provided that CHT would produce tequila under its brand, CAPE HORN, and according to its proprietary formulation, and Aiko would pay the upfront costs of bottle label registrations, financing production, freight, and importation and distribution expenses. After such upfront costs were deducted, CHT and Aiko would evenly split the net profits from the sales of Cape Horn Tequila. Further, the parties would work together to grow sales and CAPE HORN brand goodwill.

44. Plaintiff has performed its obligations under the contract, having produced 4468 cases of Cape Horn Tequila and having promoted Aiko in in conjunction with the CAPE HORN brand in various press releases, social media posts, and on its website.

45. Defendants have not performed their contractual obligations. Specifically, Aiko has failed to provide a complete accounting and distribution of Plaintiff's share of profits.

46. By reason of the above conduct, Plaintiff is owed and has sustained damages—including the amount that remains due to Plaintiff under the terms of the contract—that is within the jurisdictional limits of this court, plus interest, costs, and attorneys' fees.

## VI. FRAUDULENT REGISTRATION OF TRADEMARK

47. Plaintiff repeats, realleges, and incorporates by reference, each and every allegation and averment in the foregoing paragraphs with the same force and effect as if the same were more fully set forth at length herein.

48. "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." 15 U.S.C. § 1120 (2020). "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119 (2020).

49. To apply for a federal trademark registration, the applicant must make a verified statement or declaration, under penalty of perjury under the laws of the United States, specifying that "the person making the verification believes that he or she, or the juristic person in whose behalf he or she makes the verification, to be the owner of the mark sought to be registered" and "to the best of the verifier's knowledge and belief, no other person has the right to use such mark in commerce." 15 U.S.C. § 1051 (2020).

50. As explained above, Defendants, without authorization from Plaintiff, filed a federal trademark application on the Principal Register for the mark CAPE HORN for distilled agave liquor and distilled blue agave liquor, willfully and falsely specifying the owner of the mark to be Aiko Importers, Inc. Defendants had full knowledge that Plaintiff maintains common law rights in the CAPE HORN mark. Moreover, Defendants provided

to the United States Patent and Trademark Office a specimen of Plaintiff's Cape Horn Tequila, claiming it as their own goods. Defendants are not the manufacturer of Cape Horn Tequila and are not the source of goods shown in the specification that they provided. Defendants have continued and are continuing to fraudulently prosecute this trademark application, and have refused to assign the trademark application to Plaintiff.

51. Alternatively, for the sake of argument, Defendants' application for trademark registration cannot pass muster under an agency relationship, because Defendants' action, by claiming ownership of the mark CAPE HORN to be Aiko Importers, Inc., constitutes breach of fiduciary duty owed to the principal, Plaintiff, and regardless still constitutes fraud on the United States Patent and Trademark Office.

52. By reason of the above conduct, Plaintiff is owed and has sustained damages within the jurisdictional limits of this court, plus interest, costs, and attorneys' fees. Additionally, Plaintiff seeks a Decree and order from this Court to the Director of the United States Patent and Trademark Office that Plaintiff is the owner of trademark registration application serial number 98/584475. Alternatively, Plaintiff seeks a Decree cancelling trademark registration application serial number 98/584475.

## VII. BREACH OF FIDUCIARY DUTY

53. Plaintiff repeats, realleges, and incorporates by reference, each and every allegation and averment in the foregoing paragraphs with the same force and effect as if the same were more fully set forth at length herein.

54. Additionally, and/or alternatively, CHT and Aiko had a fiduciary relationship by virtue of their joint venture relationship as described above. Aiko owed Plaintiff a fiduciary duty to act in Plaintiff's interests, which duty includes formalizing the

joint enterprise relationship in writing, refraining from attempting to usurp ownership of the CAPE HORN brand, providing to Plaintiff timely accounting and distribution of Plaintiff's share of the profits, refraining from interfering in Plaintiff's prospective relations, and refraining from denigration of the CAPE HORN brand, among other duties. Defendants failed in all those duties causing Plaintiff injury.

55. Aiko breached its fiduciary duty to Plaintiff by breaching its duty of loyalty and utmost good faith, breaching its duty to refrain from self-dealing, breaching its duty to act with integrity, breaching its duty of fair, honest dealing, and breaching its duty of full disclosure.

56. By reason of the above conduct, Plaintiff is owed and has sustained damages within the jurisdictional limits of this court, plus interest, costs, and attorneys' fees. Additionally, Plaintiff seeks to recover from Defendants all profits received by Defendants on account of their breach of fiduciary duty.

## VIII. TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS

57. Plaintiff repeats, realleges, and incorporates by reference, each and every allegation and averment in the foregoing paragraphs with the same force and effect as if the same were more fully set forth at length herein.

58. In order to prevail on a claim for tortious interference with prospective relations, a plaintiff must prove five elements: (1) There was a reasonable probability that the plaintiff would have entered into a business relationship with a third person; (2) the defendant intentionally interfered with the relationship; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff's

injury; and (5) the plaintiff suffered actual damage or loss. *See*, *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

59. To prove an action for interference with prospective business relations, the plaintiff must establish that it had (1) a business relationship that had not yet been reduced to a contract, or (2) a continuing business relationship that was not formalized by a written contract. *Heil-Quaker Corp. v. Mischer Corp.*, 863 S.W.2d 210, 214 (Tex.App.–Houston [14th.Dist.] 1993), *writ granted w.r.m.*, 877 S.W.2d 300 (Tex. 1994). Here, CHT had an ongoing and customary business relationship with Rockwood and Hines Glass Group Ltd., who manufactured tequila bottles for Plaintiff.

60. A defendant intentionally interferes with a prospective business relation if it desires to bring about the interference or if it knows the interference is certain or substantially certain to occur as a result of its conduct. *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001). In this case, Feliks Shekhtman of Aiko intentionally pressured Hines Glass Group not to conduct business with Plaintiff, knowing that interference would certainly result.

61. A plaintiff can recover for tortious interference from a defendant who makes fraudulent statements to the third person. *Wal-Mart Stores v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). Here, Feliks Shekhtman fraudulently told Hines Glass Group that the CAPE HORN brand belonged to Aiko Importers, Inc., not Cape Horn Tequila, LLC.

62. By reason of the above conduct, Defendants proximately caused Plaintiff damages and loss.

## IX. UNFAIR COMPETITION—DENIGRATION BY UNFAIR PRICING

63. Plaintiff repeats, realleges, and incorporates by reference, each and every allegation and averment in the foregoing paragraphs with the same force and effect as if the same were more fully set forth at length herein.

64. Unfair competition includes trade disparagement—false malicious statements about a business's products, services, or operations. *See*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 135 (2014). "[W]hen a party claims reputational injury from disparagement, competition is not required for proximate cause." *Id.* Similarly, unfair competition by denigration involves a business making misleading negative statements about a competitor's products, services, or business to damage their reputation and influence customer choices. "Any person, who, on or in connection with any goods or services, … uses in commerce any … misleading representation of fact, which— … in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities … of his or her or another person's goods, … shall be liable in a civil action by any person who believes that her or she is or is likely to be damaged by such act." 15 U.S.C. § 1125 (2020).

65. As discussed above, contrary to the pricing structure agreed by the parties, Defendants are dumping Cape Horn Tequila at essentially Aiko's cost, or alternatively, at great discounts. Such action irreparably damages the brand and its associated goodwill, as it may lower Cape Horn Tequila from "top shelf" status, and consumers are likely to believe Cape Horn Tequila to be equivalent or comparable to potentially inferior less expensive tequilas produced by other manufactures based on Defendants' action of reduced pricing. Such action creates long term adverse harm to the goodwill of the CAPE HORN brand.

66. Moreover, are selling CAPE HORN branded whiskey using an inferior quality whiskey, diluting the CAPE HORN brand and causing long term irreparable harm to the goodwill of the CAPE HORN brand and to Plaintiff.

67. By reason of the above conduct, Plaintiff has sustained damages within the jurisdictional limits of this court, plus interest, costs, and attorneys' fees. Additionally, Plaintiff seeks to recover from Defendants all profits received by Defendants on account of their unfair competition practices.

## X. DECEPTIVE TRADE PRACTICES

68. Plaintiff repeats, realleges, and incorporates by reference, each and every allegation and averment in the foregoing paragraphs with the same force and effect as if the same were more fully set forth at length herein.

69. The Texas Deceptive Trade Practices Act provides cumulative remedies for protection from false, misleading, or deceptive business practices and unconscionable actions. Tex. Bus. & Com. Code § 17.41 *et seq*. In particular, the following specific acts or practices are considered false, misleading, or deceptive: Passing of goods or services as those of another, *id*. at § 17.46(b)(1); causing confusion or misunderstanding about the source, sponsorship, approval, or certification of goods or services, *id*. at § 17.46(b)(2); and causing confusion or misunderstanding about the affiliation, connection, or association with, or certification by, another, *id*. at § 17.46(b)(3).

70. By selling CAPE HORN branded whiskey, Defendants are intentionally and maliciously passing off goods as those of Plaintiff and causing confusion as to the source of the goods.

71. By falsely advertising that every bottle of CAPE HORN branded whisky sold directly supports Skeleton Crew, Defendants are intentionally causing confusion or misunderstanding about the affiliation, connection, or association with Skeleton Crew.

72. By reason of the above conduct, Plaintiff has sustained damages within the jurisdictional limits of this court, plus interest, costs, and attorneys' fees. Additionally, Plaintiff seeks to recover from Defendants all relief afforded under the Texas Deceptive Trade Practices Act I

## XI. CONVERSION

73. Plaintiff repeats, realleges, and incorporates by reference, each and every allegation and averment in the foregoing paragraphs with the same force and effect as if the same were more fully set forth at length herein.

74. Additionally, and/or alternatively, Plaintiff owned, possessed, and had the right to immediate possession of its personal property including but not limited to the unsold Cape Horn Tequila held by Aiko and the application for federal trademark registration, serial number 98/584475 for use in the course of its business.

75. Defendants collectively wrongfully exercised dominion or control over Plaintiff's personal property by utilizing such information in competition with and against the interests of Plaintiff.

76. By reason of the above conduct, Plaintiff is owed and has sustained damages within the jurisdictional limits of this court, plus interest, costs, and attorneys' fees.

## XII. CONSPIRACY & AIDING & ABETTING

77. Plaintiff repeats, realleges, and incorporates by reference, each and every allegation and averment in the foregoing paragraphs with the same force and effect as if the same were more fully set forth at length herein.

78. The elements of conspiracy are: (1) The defendant was a member of a combination of two or more persons; (2) the object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) the plaintiff suffered injury as a proximate result of the wrongful act. *Agar Corp v. Electro Circuits Int'l*, 580 S.W.3d 136, 141 (Tex. 2019).

79. Defendant spouses Irina Kogan and Feliks Shekhtman, along with Aiko Importers Inc., which they control, acted in concert, with a meeting of the minds, having the objective to usurp ownership of the CAPE HORN brand from Plaintiff, to deny Plaintiff its share of the profits from the joint enterprise, and to tortuously harm Plaintiff's business. Defendants conspired to fraudulently register CAPE HORN as their own trademark, as set forth above in Section VI. Defendants conspired to tortuously breach the fiduciary duty and loyalty they owed to Plaintiff, either by way of agency or their relationship in the joint enterprise, as set forth above in Section VII. Defendants conspired to tortuously interfere with Plaintiff's prospective business relations as set forth above in Section VIII. Defendants committed these intentional torts in furtherance of their own personal gain. Accordingly, Aiko Importers, Inc, Irina Kogan, personally, and Feliks Shekhtman,

personally, are joint tortfeasors and are jointly and severally liable to Plaintiff for the damages and harm caused by their course of action.

80. Additionally and/or alternatively, Aiko Importers, Inc, Irina Kogan and Feliks Shekhtman, personally, are jointly liable to Plaintiff under an Aiding and Abetting theory of liability.

81. By reason of the above conduct, Plaintiff is owed and has sustained damages within the jurisdictional limits of this court, plus interest, costs, and attorneys' fees.

## XIII. VICARIOUS LIABILITY

82. Plaintiff repeats, realleges, and incorporates by reference, each and every allegation and averment in the foregoing paragraphs with the same force and effect as if the same were more fully set forth at length herein.

83. Irina Kogan and Feliks Shekhtman are each personally vicariously liable to Plaintiff for acts or omissions of Aiko Importers, Inc. because the corporation was organized and operated as a mere tool or business conduit of Kogan and Shekhtman.

84. To pierce the corporate veil under the "alter ego" theory, the plaintiff must demonstrate: (1) a financial interest, ownership, or control by the defendant, *Stewart & Stevenson Servs. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 108 (Tex. App.–Houston [14th Dist.] 1994, writ denied); (2) a unity between the corporation and the individual such that the separateness of the corporation has ceased, *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990); and (3) that holding only the corporation liable would result in injustice, *id.*

85. Here, Irina Kogan and Feliks Shekhtman fully control Aiko Importers, Inc. and are believed to have substantial ownership, if not complete ownership thereof. On

information and belief, personal and corporate funds and property have been regularly commingled, the corporation has been used for personal purposes of Kogan and Shekhtman, and company profits have been diverted to Kogan and Shekhtman for personal use resulting in inadequate capitalization of Aiko Importers, Inc. Because Aiko Importers, Inc. may be inadequately capitalized, it would be unjust to leave Plaintiff with an uncollectable judgement against Aiko Importers, Inc. while allowing the corporation's alter egos to escape liability.

86. By reason of the above conduct of Irina Kogan and Feliks Shekhtman, Irina Kogan and Feliks Shekhtman are vicariously liable to for actions and omissions of Aiko Importers, Inc. Plaintiff is owed and has sustained damages within the jurisdictional limits of this court, plus interest, costs, and attorneys' fees.

## XIV. RESPONDEAT SUPERIOR

87. At the time of the incidents made the basis of this suit, Defendants' agents, servants and employees were in fact Defendants' agents, servants and employees, and acting within the scope of their employment and authority as Defendants' agents, servants and employees.

## XV. EXEMPLARY DAMAGES

88. Pursuant to Chapter 41 of the Texas Civil Practice & Remedies Code, the conduct by Defendants constitutes fraud and malice and in the alternative gross negligence as defined in Chapter 41 of the Texas Civil Practice & Remedies Code.

89. As a result of the above described conduct, acts and omissions, Plaintiff is entitled to exemplary damages from Defendants in an amount within the jurisdictional limits of this court.

## XVI. CONDITIONS PRECEDENT

90. All conditions precedent have been performed or have occurred.

## XVII. JURY DEMAND

91. Plaintiff hereby demands a jury trial.

## XVIII. PRAYER

WHEREFORE, Plaintiff respectfully requests that, on final trial, Plaintiff have:

a. Judgment against Defendants awarding Plaintiff damages in an amount within the jurisdictional limits of this court;

b. Judgment against Defendants awarding Plaintiff exemplary damages;

c. Judgment against Defendants awarding Plaintiff reasonable attorneys' fees and expenses;

d. Declaratory relief under Section 15 U.S.C. § 1119 transferring ownership of the pending CAPE HORN trademark registration application to Plaintiff, or alternatively cancellation of said application;

e. Judgment against Defendants awarding Plaintiff prejudgment and post-judgment interest as allowed by law;

f. Judgment against Defendants awarding Plaintiff costs of suit; and

g. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**EUREKA INTELLECTUAL PROPERTY LAW PLLC**

/s/ Brett T. Cooke
Brett T. Cooke
Attorney-in-Charge
State Bar No. 24055343
20507 Tamarron Drive
Humble, Texas 77346
832-287-7039 Telephone
brett@eurekaiplaw.com

**NICHAMOFF LAW, P.C.**

/s/ Seth A. Nichamoff
Seth A. Nichamoff
State Bar No. 24027568
Federal I.D. No. 27002
2444 Times Boulevard, Suite 270
Houston, Texas 77005
(713) 503-6706 Telephone
(713) 360-7497 Facsimile
seth@nichamofflaw.com

**ATTORNEYS FOR PLAINTIFF
CAPE HORN TEQUILA LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on 01 April 2026, a true and correct copy of this document has been served via filing through the ECF system.

/s/ Brett T. Cooke
Brett T. Cooke